CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JUL 13 2011
JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

|  |  |
|---|---|
| INTERMET CORPORATION<br>　　　　　　　　　*Petitioner,*<br><br>v.<br><br>UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, *and*<br><br>UNITED STEEL WORKERS OF AMERICA LOCAL UNION 8270<br>　　　　　　　　　*Respondents.* | MISC. NO. 6:10-MC-00007<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Petitioner Intermet Corporation ("Intermet") brought this action to set aside an arbitrator's decision awarding Respondents United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("USW"), and United Steel Workers of America Local Union 8270 ("Local 8270," and collectively with USW, the "Union") *pro rata* payment of vacation benefits under the terms of a collective bargaining agreement. The parties have filed cross motions for summary judgment, and the matter is ripe for decision. For the reasons set forth below, I will grant Intermet's motion for summary judgment, deny the Union's motion for summary judgment, and vacate the arbitrator's award.

1

# I.

## A.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Where, as here, the court faces cross motions for summary judgment, it must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987).

The relevant facts are not generally in dispute. Intermet was the owner of the Archer Creek foundry in Campbell County, Virginia. The Union and Intermet were parties to a collective bargaining agreement ("CBA"), which took effect on August 4, 2003, and was extended by mutual agreement through December 31, 2009. Article 11 of the CBA, "Vacations," set forth certain eligibility requirements for vacation benefits, including paid time off, and pay in lieu of time off. Section 5 of Article 11 provided that:

> To be eligible for vacation benefits during any calendar year, an employee must be actively employed on December 31 of the preceding year. If an employee retired, is discharged for cause, or voluntarily quits, he will be eligible for vacation benefits as of his last day worked in accordance with the other provisions of this Article. Such employee shall receive his vacation pay at the time of his termination. In the event of death, payment will be made to the employee's representative as provided by law.

Having earlier filed for bankruptcy, Intermet ceased all operations at the foundry and terminated approximately 170 members of Local 8270 as of December 26, 2009. Although the company paid vacation benefits that were due to employees for the year 2009, it did not pay any benefits allegedly due for the year 2010, because it took the position that such benefits did not accrue for any employee unless he was "actively employed" on December 31, 2009 under Article 11 § 5.

In accordance with the CBA, the Union filed a grievance contesting Intermet's decision, and submitted the dispute to arbitration. Although the arbitrator acknowledged that "[t]he unambiguous language of the Parties [*sic*] Agreement states that a bargaining unit Employee must be actively employed on December 31 of the preceding year in order to be eligible for vacation benefits," he nonetheless found that Intermet had violated the CBA. In so doing, he effectively concluded that bankruptcy and plant closure were exceptions to the eligibility date. He reasoned that the December 31 cutoff was "not all inclusive" because the "[t]he negotiators took the time to add language that would ensure that bargaining unit [e]mployees, even those discharged for just cause, would receive monetary reimbursement for earned vacation." He added, "even in the event of death, the negotiators took the time to add appropriate language to ensure payment." Although "bankruptcy was not one of those possible situations outlined by the negotiators," he concluded that it would be "absurd" not to award vacation benefits in the event of bankruptcy, because "the Employee cannot be denied an earned benefit by a situation that was totally out of their control."

## B.

Arbitration is "declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective bargaining agreement." 29 U.S.C. § 173(d). Therefore, a district court must give "considerable deference" to an arbitrator's decision. *Parsons v. Power Mountain Coal Co.*, 604 F.3d 177, 181 (4th Cir. 2010) (citing

3

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987)). Indeed, judicial review of arbitration decisions is "among the narrowest known to law." *U.S. Postal Serv. v. Am. Postal Workers Union*, 204 F.3d 523, 527 (4th Cir.2000) (quoting *Union Pac. R.R. v. Sheehan*, 439 U.S. 89, 91 (1978)).

However, "arbitration awards may be overturned if the award violates well-settled and prevailing public policy, fails to draw its essence from the collective bargaining agreement or reflects the arbitrator's own notions of right and wrong." *Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union*, 76 F.3d 606, 608 (4th Cir. 1996). In determining whether the decision "draws its essence" from the contract, courts "do not review the reasoning of arbitrators . . . but look only to the result reached; the single question is whether the award . . . is rationally inferable from the contract." *Qorvis Communications, LLC v. Wilson*, 549 F.3d 303, 312 (4th Cir. 2008) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co.*, 142 F.3d 188, 193 n. 5 (4th Cir. 1998)). Nonetheless, courts may examine the arbitrator's reasoning "to determine whether he was applying contractual terms or 'his own brand of industrial justice.'" *Cannelton Industries, Inc., v. Dist. 17, United Mine Workers of America*, 951 F.2d 591, 594 (4th Cir. 1991). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Misco*, 484 U.S. at 38.

At the outset, I note that there is no dispute concerning the operation of the vacation benefits provision of the CBA in the ordinary course of business. Because of the December 31 limitation of Article 11 § 5, an employee who began work in 2007 would not generally have been entitled to vacation benefits until 2008, because he was not "actively employed" on December 31, 2006. Indeed, the arbitrator recognized that the CBA was "unambiguous" in this

4

respect, and he noted the Union's acknowledgment that "[a]ny Employee is always a year behind with vacation earnings."

The controversy surrounds whether the rule is different in the case of bankruptcy or a plant closure. In concluding that it is, the arbitrator purported to construe the term "actively employed." He reasoned that the Article 11 § 5 provision for retirees, decedents, those who voluntarily quit, and those who were discharged for cause, "define[d] and reiterate[d] what the express definition was regarding the term 'actively employed.'" And although bankruptcy and plant closure were not explicitly included in this "express definition," the arbitrator determined that they were impliedly so. Thus, the Union analogizes this case to *PPG Industries, Inc. v. International Chemical Workers Union*, 587 F.3d 648 (4th Cir. 2009), where the court upheld a determination that employees on strike were "actively employed." There, the agreement in question included a list of actively employed persons, but striking employees were not among them. *Id.* at 651. However, the agreement also included a list of persons who were *not* actively employed, and striking employees were not among them either. As the arbitrator had to make an inference from the contract, and he arguably did so in accordance with the intent of the parties, the court upheld his decision. *Id.* at 653.

This case is markedly different from *PPG Industries*. Although the CBA contains the same ambiguous term, "actively employed," the definition of the term itself was not in issue here. Contrary to the arbitrator's suggestion, the CBA contains no "express definition" of "actively employed," and the provision for the retired, deceased, and those who voluntarily quit, did not "define" the term. A non-frivolous argument can be made that the provision created an exception to the active employment requirement.[1] But retirees and the deceased are very clearly

---

[1] Internet contends that the Article 11 § 5 provision regarding retirees, employees discharged for just cause, and for those who voluntarily quit, is not an exception to the December 31 requirement, since such persons must nonetheless

5

not among the "actively employed," just as those who have lost their jobs due to plant closure are very clearly not among the "actively employed." While it was well within the arbitrator's authority to construe an ambiguous term, it was not permissible for him to insert a new exception into the contract.[2] But by adding a provision for bankruptcy and plant closure, the arbitrator did just that.

The Union compares this case to *Yuasa, Incorporated v. International Union of Electric, Electrical, Salaried Machine and Furniture Workers*, 224 F.3d 316 (4th Cir. 2000). There, the controversy surrounded a bonus scheme that was intended to increase worker efficiency. Payment of the bonus was contingent on the outcome of a formula, one of the variables of which was determined by reference to a "product identified on M90 reports by operators in *subsequent processes*." *Id.* at 323 (emphasis in original). Because the figure from the M90 reports varied in the case of machine error as well as human error, the arbitrator found that the formula could not be calculated by mechanical reference to the report, without undermining the intent of the parties. He thus concluded that the figure should be adjusted to reflect only human error, and the Fourth Circuit upheld his decision. *Id.* at 322. However, in italicizing the words "subsequent processes," the court appears to have concluded that they imbued the contract with enough ambiguity to allow the arbitrator to so decide. Thus, both *PPG Industries* and *Yuasa* show that the Fourth Circuit is highly deferential to an arbitrator's construction of an ambiguous term. However, in this case, as the arbitrator recognized, there was no ambiguity in the requirement

---

satisfy the "other provisions of this Article." However, it is at least arguable that "other provisions of this Article" refers to the other sections of Article 11, and thus that the clause operates as an exception to the eligibility date. In light of the deferential standard of review, I must accept this position.

[2] Under the CBA, "[t]he arbitrator shall have no power to add to, subtract from or modify this Agreement in any way, but shall instead be limited to the application f the terms of this Agreement in determining the dispute." Art. 18 § 2.

6

that "[t]o be eligible for vacation benefits . . . an employee must be actively employed on December 31 . . . ."

Contrary to the Union's contention, *Mountaineer Gas Company v. Oil, Chemical & Atomic Workers International Union,* 76 F.3d 606, 609 (4th Cir. 1996), is directly on point. There, the contract in issue stated that an employee testing positive for drugs would be promptly discharged. The court concluded that the arbitrator exceeded his authority in determining that an exception should be made for an employee with a longstanding, unblemished history with the company. According to the Union, *Mountaineer Gas* is distinguishable because it was "clear that the drug policy . . . was promulgated with the precise situation that occurred in mind, namely, how the company should respond if an employee tests positively for drugs." Resp't's Reply Br. at 10. But it could equally be said that the parties in this case specifically contemplated how Intermet should respond if an employee was not actively employed on December 31. Furthermore, it is of no consequence whether the parties failed to consider an exception for bankruptcy or plant closure, as it could also have been said in *Mountaineer Gas* that the parties failed to consider an exception to the drug policy.[3]

*Norfolk and Western Railway v. Transportation Communications International Union* is not to the contrary. 17 F.3d 696 (4th Cir. 1994). There, the employer argued that since the arbitration agreement only allowed the arbitrator to "request" evidence, it could draw no adverse inference from the employer's failure to respond to such a request, without converting the provision to a "requirement." *Id.* at 701. The Fourth Circuit disagreed, concluding that the contract "effectively ceded to the arbitrators the task of defining the scope of their power by

---

[3] It bears noting that the parties actually did contemplate payment of vacation benefits in the event of plant closure. Article 6 § 11 provides that in the event of a permanent closure, employees are entitled to a severance allowance "in addition to other benefits such as vacation pay. . . to which the employee may be entitled." That the parties considered such an eventuality, and failed to agree upon any exception to the eligibility date, lends further support to the conclusion that the arbitrator exceeded his authority.

7

providing ... little guidance. . . ." *Id.* In particular, the contract was silent about the weight to be accorded to any evidence, or its absence. Thus, in *Norfolk and Western*, as in *PPG Industries* and *Yuasa*, the contract was silent about a matter that begged resolution. But, as *Mountaineer Gas* shows, although an arbitrator has great leeway to "fill in the gaps" of a contract, he may not treat every contractual silence as a gap to be filled.

The Union also suggests that the arbitrator's decision was a permissible interpretation of the contract because it merely gave weight to one conflicting provision over another. *See U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers*, 789 F.2d 18, 20 (D.C. Cir. 1986); *Madison Hotel v. Hotel & Rest. Employees*, 144 F.3d 855, 859 (D.C. Cir. 1998); *DBM Techs. v. Local 227, United Food & Commercial Workers Int'l Union*, 257 F.3d 651, 658 (6th Cir. 2001). In support of this theory, the Union looks to the arbitrator's consideration of Article 11 § 6 of the CBA, which states that "[t]o be eligible for vacation benefits . . . an employee must have worked not less than 800 hours during the preceding calendar year." The arbitrator concluded that that provision was the only limitation applicable in the bankruptcy context. However, there is no conflict between 800-hour requirement, and the December 31 requirement, and the contract is simply not susceptible of an interpretation that makes only one of the two provisions determinative.

Finally, I note that the Sixth Circuit has suggested that arbitrators are free to disregard an eligibility date in awarding vacation pay when a plant shuts down. *See Schneider v. Elec. Auto-Lite Co.*, 456 F.2d 366, 371 (6th Cir. 1972). The court reasoned, in part, that an employee should not be deprived of a benefit because of the employer's "unilateral action." *Id.* at 372. However, the Sixth Circuit has not been consistent in its application of the rule. *See Alken-Ziegler, Inc. v. United Automobile, Aerospace and Agricultural Implement Workers*, 134 F. App'x 866 (2005) (unpublished opinion). In any event, *Schneider* is not binding in the Fourth Circuit, and appears

to conflict with the principle that an arbitrator may not substitute his own notions of fairness for the contractually agreed upon terms.

Because the employees in this case were not actively employed as of the eligibility date, I must conclude that the contract does not provide for the benefits sought. In holding otherwise, the arbitrator applied his own notions of industrial justice, and the award must be vacated.

## II.

For the foregoing reasons, Intermet's motion for summary judgment will be granted; the Union's motion for summary judgment will be denied; and the decision of the arbitrator will be vacated.

The Clerk of the Court is directed to send a certified copy of this opinion to all counsel of record.

Entered this 13th day of July, 2011

                                                  NORMAN K. MOON
                                                  UNITED STATES DISTRICT JUDGE